UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MELVIN R. BRUCE,

    Plaintiff,

    v.      CAUSE NO. 3:24-CV-834-GSL-AZ

INDIANA DEPARTMENT OF
CORRECTIONS, et al.,

    Defendants.

OPINION AND ORDER

Melvin R. Bruce, a prisoner without a lawyer, filed a complaint after his personal property was lost or destroyed on two occasions while he was incarcerated at the Westville Correctional Facility ("WCF"). ECF 1. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Bruce alleges that, when he arrived at the WCF, he was issued a property box and a combination lock to secure his property from theft. On September 24, 2023, he was removed from his cell by Sergeant Bryan Hogan and taken to the Industrial

Complex due to an alleged conduct violation.[1] Prior to being removed form his cell, he secured his property in his property box and placed it under his bunk. It was the responsibility of Sergeant Hogan and Officer John Mendiola to inventory Bruce's property and place it in a secure location.

The next morning, Bruce was returned to his cell by Sergeant Flakes. Bruce's property box was located in the hallway near the Captain's Office, and Sergeant Flakes returned it to Bruce. The lid of the property box had been pried off, and his property was missing. This included prescription eyeglasses, gym shoes, legal materials, toiletries, commissary items, resource books, cooking supplies, a GTL tablet, and irreplaceable photos.

Bruce reported the theft to Sergeant Hogan. He responded by laughing and saying "good." Later that day, Bruce reported the theft to Sergeant Flakes, who agreed to try to secure some of his property. Bruce asked Lieutenant Risner to view security camera footage to determine what happened, but he did not agree to do so. Sergeant Flakes was able to locate and return Bruce's GTL tablet and two small totes used for cooking.

Later, an inmate told Bruce that he observed Sergeant Hogan, Corrections Officer Mendiola, and an unidentified inmate handling and disposing of Bruce's property. On September 29, 2023, Bruce filed a grievance about the property loss, Sergeant Hogan and Corrections Officer Mendiola's participation in that loss, and Lieutenant Reisner

---

[1] The charge was later dismissed.

allegedly protecting the responsible parties. That grievance was marked received on December 14, 2023.

On December 26, 2023, Bruce was told that he would be leaving to have a medical procedure performed. He again secured his property. He turned the property over to Sergeant Winters and Correctional Officer Ryan. He witnessed it being placed in the officer's cage, which is an area only accessible to staff. He returned two days later and was placed in the General Services Complex ("GSC") intake office. He asked for his property, and he received a box of legal paperwork and a laundry bag containing three state issued jump suits of a style that was no longer being used.[2] A "Restricted Status Housing Unit Inventory List" was attached to the property. He had not been assigned to restricted housing, and the list that was used to conduct the inventory of Hogan's property did not provide a place to record items that would commonly be possessed by inmates housed in general population. Thus, the list was incomplete. Bruce estimates the list included about thirty percent of the property he secured in his box, and it did not include the items that were returned to Bruce.

Bruce was told he would receive the rest of his property when the property room officer arrived. After several days, Bruce sought assistance from Sergeant Sable and Sergeant Winters. On January 4, 2024, Sergeant Sable reported that they had checked the GSC property room on three occasions and his property could not be located.

---

[2] Bruce believes the jump suits were provided so that he would be subject to ridicule and humiliation.

Bruce asked L. Robinson why or how his property was removed from the officers' cage, and why the wrong inventory form was used. She indicated that Sergeant Hogan provided her with the form and told her to get Bruce's property ready to move. She also indicated that Sergeant Hogan removed Bruce's property from the officers' cage the evening that Bruce had his medical procedure performed. The rest of Bruce's property was never returned.

The loss of the GTL tablet made it difficult to communicate with family, order commissary, access entertainment, track his finances, and keep abreast of important notices. Bruce asked Director Hall about replacing his tablet; Director Hall refused, insisting Bruce would need to pay $250 to replace the tablet before it would be ordered. Bruce indicates it could take six months to a year to receive a replacement.

Bruce's siblings were upset about the loss of property because they had provided the funds to replace the property when it was lost the first time. They spoke with Warden Lawrence Gann in January 2024 and were assured that Bruce's property would be returned or the replacement value would be paid. He has not received his property or payment to compensate him for its loss. He alleges he filed timely tort claim notices regarding his losses.

Bruce is suing the Indiana Department of Correction, Commissioner Christina Reagle, Warden Jason Smiley, Warden of Operations Kenneth Gann, Director Hall, Major Chad Cornette, Captain Lawrence Machin, Lieutenant Matthew Risner, Sergeant Bryan Hogan, and Corrections Officer John Mendiola. He alleges that the defendants violated his rights under the First Amendment by retaliating against him for engaging

4

in protected speech. Additionally, he alleges that his due process rights under the Fourteenth Amendment were violated. He also alleges that his right to access the courts was infringed. He further asserts claims for conversion and intentional infliction of emotional distress pursuant to Indiana law, and claims based on violations of Indiana's constitution.

*Retaliation Claim*

Bruce alleges that the second property theft occurred in retaliation for Bruce's attempts to address Sergeant Hogan's and Corrections Officer Mendiola's earlier theft of his property, including a grievance and tort claim notices. "To prevail on his First Amendment retaliation claim, [Bruce] must show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendant['s] decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (quotation marks and citations omitted). Here, Bruce has alleged that he engaged in First Amendment activity and that he suffered a deprivation likely to deter future First Amendment activity. Furthermore, it can be plausibly inferred from the facts alleged that Sergeant Hogan, who allegedly directed Robinson to inventory Bruce's property and was seen removing Bruce's property, was motivated to retaliate against Bruce for failing a grievance against him shortly before the incident. Therefore, he may proceed on a retaliation claim against Sergeant Hogan. He has not, however, alleged facts from which it can be plausibly

5

inferred that any other defendant was involved in destroying or failing to return his property in retaliation for Bruce's earlier First Amendment activity.

*Due Process Claim*

Bruce alleges that the taking of his property violated the Fourteenth Amendments Due Process Clause. The Fourteenth Amendment provides that state officials shall not "deprive any person of life, liberty, or property, without due process of law . . .." But, a state tort claims act that provides a method by which a person can seek reimbursement for the negligent loss or intentional depravation of property meets the requirements of the due process clause by providing due process of law. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ("For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable postdeprivation remedy.") Indiana's tort claims act (Indiana Code § 34-13-3-1 *et seq.*) and other laws provide for state judicial review of property losses caused by government employees and provide an adequate post deprivation remedy to redress state officials' accidental or intentional deprivation of a person's property. *See Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) ("Wynn has an adequate post-deprivation remedy in the Indiana Tort Claims Act, and no more process was due."). Therefore, Bruce has not stated a due process claim based on the taking of his property.

*Access to Courts Claim*

Bruce further alleges that the taking of his property deprived him of access to the courts. Prisoners are entitled to meaningful access to the courts. *Bounds v. Smith*, 430 U.S. 817, 824 (1977). The right of access to the courts is the right of an individual, whether free or incarcerated, to obtain access to the courts to adjudicate claims that have a reasonable basis in law or fact without undue interference. *Snyder v. Nolen*, 380 F.3d 279, 291 (7th Cir. 2004). To establish a violation of the right to access the courts, an inmate must show that unjustified acts or conditions hindered the inmate's efforts to pursue a non-frivolous legal claim, and that actual harm resulted. *See Lewis v. Casey*, 518 U.S. 343, 351 (1996); *Nance v. Vieregge*, 147 F.3d 591, 590 (7th Cir. 1998). In other words, "the mere denial of access to a prison law library or to other legal materials is not itself a violation of a prisoner's rights; his right is to access *the courts*, and only if the defendants' conduct prejudices a potentially meritorious [claim] has this right been infringed." *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006) (emphasis in original). Thus, to state a claim, Bruce must "spell out, in minimal detail" the connection between the denial of access to legal materials and the resulting prejudice to a potentially meritorious legal claim. *Id.* Bruce has not alleged that any potentially meritorious legal claim was prejudiced as a result of his property being taken. Therefore, he may not proceed on this claim.

*Tort Claims Pursuant to Indiana Law*

Bryce also alleges that the defendants converted his property and subjected him to intentional infliction of emotional distress, in violation of Indiana law. "In order to maintain an action for conversion, the plaintiff must establish the appropriation of personal property by another for that party's own use and benefit in exclusion and defiance of the owner's rights." *Shourek v. Stirling,* 621 N.E.2d 1107, 1109 (Ind.1993). The elements of an intentional infliction of emotional distress claim are that the defendant: "(1) engage[d] in extreme and outrageous conduct (2) which intentionally or recklessly (3) causes (4) severe emotional distress to another." *Curry v. Whitaker*, 943 N.E.2d 354, 361 (Ind. Ct. App. 2011). Assuming Bruce's allegations state a claim of conversion and intentional infliction of emotional distress against one or more defendant, he still cannot proceed here, because the Indiana Tort Claims Act ("ITCA") applies. Ind. Code § 34-13-3 *et seq.*

Under the ITCA, any recovery available to Bruce must be based on a claim against the Indiana Department of Correction. The ITCA prohibits tort suits against government employees personally for conduct within the scope of their employment. *See* Ind. Code § 34-13-3-5(b); *see also Ball v. City of Indianapolis*, 760 F.3d 636, 645 (7th Cir. 2014) ("Under the Indiana Tort Claims Act, there is no remedy against the individual employee so long as he was acting within the scope of his employment."). Instead, the governmental employer is held liable for its employee's actions: "[g]overnmental entities are subject to liability for torts committed by their agencies or employees unless one of the immunity provisions of the [ITCA] applies." *Minks v. Pina*, 709 N.E.2d 379,

8

382 (Ind. App. Ct. 1999). However, the Indiana Department of Correction is an arm of the State. *See* Ind. Code § 11-8-2-1 ("There is established in the executive branch of state government a department of correction."). This means that it shares Indiana's Eleventh Amendment immunity, preventing it from being sued in federal court unless an exception applies. *Burrus v. State Lottery Comm'n of Ind.*, 546 F.3d 417, 420 (7th Cir. 2008) ("[S]tate agencies, as arms of the state, are immune from suit under the Eleventh Amendment.").

The ITCA explicitly states that "[t]his chapter shall not be construed as … consent by the state of Indiana or its employees to be sued in any federal court[.]" Ind. Code 34-13-3-5(f). This means that Bruce cannot bring his potential ITCA claims in federal court. Therefore, the Indiana Department of Correction will be dismissed without prejudice.

*Claims Pursuant to Indiana's Constitution*

Bruce also alleges that the defendants violated Article I, §§ 1, 9, and 12 of the Indiana Constitution. Indiana courts, however, have not explicitly recognized a private right of action for violations of the Indiana Constitution. *Cantrell v. Morris*, 849 N.E.2d 488, 499 (Ind. 2006) (observing that Indiana "has no statutory provision comparable to 42 U.S.C. section 1983 creating an explicit civil remedy for constitutional violations by either individual officers or governmental entities"). The Indiana Supreme Court has held that, at least where a state tort law remedy is potentially available, "it is unnecessary to find a state constitutional tort." *Id.* Therefore, he may not proceed on any claim pursuant to the Indiana Constitution.

For these reasons, the court:

(1) GRANTS Melvin R. Bruce leave to proceed against Sergeant Bryan Hogan in his individual capacity for compensatory and punitive damages for retaliating against Bruce by destroying or facilitating the destruction of Bruce's property on December 26, 2023, in violation of the First Amendment;

(2) DISMISSES all other claims;

(3) DISMISSES Commissioner Christina Reagle, Warden Jason Smiley, Warden of Operations Kenneth Gann, Director Hall, Major Chad Cornette, Captain Lawrence Machin, Lieutenant Matthew Risner, and Corrections Officer John Mendiola;

(4) DISMISSES the Indiana Department of Correction WITHOUT PREJUDICE;

(5) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Sergeant Bryan Hogan at the Indiana Department of Correction, with a copy of this order and the complaint (ECF 1);

(6) ORDERS the Indiana Department of Correction to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(7) ORDERS, under 42 U.S.C. § 1997e(g)(2), Sergeant Bryan Hogan to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on April 15, 2025

/s/Gretchen S. Lund
JUDGE
UNITED STATES DISTRICT COURT